IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Devin Grosswiler, et al.,

                Plaintiffs,                Case No. 3:14 CV 1551

      -vs-

                                   MEMORANDUM OPINION
                                   AND ORDER

Freudenberg-NOK Sealing Technologies,

                Defendant.

## INTRODUCTION

Plaintiffs Christopher Doerner and Devin Grosswiler, on behalf of themselves and all others similarly situated (collectively "Plaintiffs"), initiated this action against Defendant Freudenberg-NOK Sealing Technologies ("Defendant" or "FNST") for uncompensated overtime pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. (Doc. No. 1).

Before me is FNST's motion for summary judgment. (Doc. No. 21).[1] Plaintiffs filed an opposition (Doc. No. 24) and FNST filed a reply (Doc. No. 26). For the reasons stated below, FNST's motion is granted.

## BACKGROUND

FNST produces precision molded seals and sealing products at an assembly plant in Milan, Ohio. (Doc. No. 22-1 at 2). The Milan Plant is divided into a production area and a warehouse area, each performing a different function. (*Id.*). In the production area, employees on production lines assemble products into "kits" that are bagged, boxed, and labeled. (*Id.*). In the warehouse area, employees receive, store, and ship products to customers. (*Id.*).

---

[1] Plaintiffs' deadline for conditional certification as a "collective action" was stayed pending the outcome of summary judgment. (*See* Doc. No. 20).

FNST pays time and one-half, or "overtime," to its employees whenever they work over 40 hours in a workweek. (Doc. No. 22-2 at 6; Doc. No. 22-3 at 9). To manage overtime and ensure proper compensation, FNST requires employees to schedule and obtain approval from lead employees before working beyond their scheduled shift times. (Doc. No. 22-2 at 6-7; Doc. No. 22-3 at 9). Employees at the Milan Plant report to different lead employees depending on the plant area to which they are assigned on a given day. (Doc. No. 22-2 at 7-8; Doc. No. 22-3 at 21). The lead employees track work performed outside scheduled shift times and report overtime to payroll. (Doc. No. 22-1 at 3).

Plaintiffs Doerner and Grosswiler are hourly employees in the warehouse area at the Milan Plant. Doerner has worked at FNST since February 26, 2007. (Doc. No. 22-2 at 13). Before working as a warehouse technician, Doerner worked in the production area from February 2007 to November 2012. (Doc. No. 22-2 at 14-15). Grosswiler has worked as a warehouse technician since June of 2007. (Doc. No. 22-3 at 24). Plaintiffs' shifts begin at 8:00 a.m. and end at 4:30 p.m., with one half-hour lunch break. (Doc. No. 22-2 at 14; Doc. No. 22-3 at 15). At times, Doerner is scheduled for 6:00 a.m. shifts. (Doc. No. 22-2 at 4-5). According to Plaintiffs, warehouse technicians must perform a series of tasks before beginning each work day. These tasks include obtaining an "RF gun," changing the batteries in the RF gun, picking up a radio, and putting on a safety harness. (Doc. No. 22-2 at 21, 23; Doc. No. 22-3 at 16-19, 23-26). Employees then proceed to their work stations and log in their RF guns. (Doc. No. 22-3 at 16-19).

Plaintiffs admit FNST paid them overtime, but they are not sure how much overtime they have been paid, or on how many paychecks. (Doc. No. 22-2 at 3; Doc. No. 22-3 at 3). Plaintiffs cannot recall any specific times they worked more than 40 hours a week and were not paid overtime. (Doc. No. 22-2 at 39; Doc. No. 22-3 at 36). Instead, Plaintiffs claim they should have been paid overtime "every week" because they "clock[ed] in early every day" to perform pre-shift tasks. (Doc.

2

No. 22-2 at 4; Doc. No. 22-3 at 3, 40). Specifically, Plaintiffs allege they routinely clocked in approximately fifteen minutes early each day to complete their pre-shift tasks, but were not compensated for that time. (Doc No. 24 at 1). As support, Plaintiffs provided time sheets which purportedly show lead supervisors crossing out overtime numbers attributed to pre-shift tasks. (*See* Doc. No. 24 at 2). Plaintiffs' time-sheets, however, reveal they clocked-in an average of only three to four minutes prior to their shifts:

| Doerner | | Grosswiler | |
|---|---|---|---|
| Date | Time | Date | Time |
| 11/25/2013 | 7:57 a.m. | 11/25/2013 | 7:53 a.m. |
| 11/26/2013 | 7:58 a.m. | 11/26/2013 | 7:54 a.m. |
| 11/27/2013 | 7:55 a.m. | 11/25/2013 | 7:55 a.m. |
| 12/23/2014 | 7:56 a.m. | 12/23/2013 | 7:54 a.m. |
| 12/26/2013 | 7:57 a.m. | 12/26/2013 | 7:55 a.m. |
| 12/27/2013 | 7:57 a.m. | 12/27/2013 | 7:57 a.m. |
| 01/07/2014 | 7:51 a.m. | 01/06/2014 | 7:55 a.m. |
| 01/08/2014 | 7:57 a.m. | 01/07/2014 | 7:51 a.m. |
| 01/13/2015 | 7:56 a.m. | 01/08/2014 | 7:57 a.m. |
| 01/14/2015 | 7:57 a.m. | 01/09/2014 | 7:57 a.m. |
| 01/15/2014 | 5:58 a.m. | 01/10/2014 | 7:56 a.m. |
| 01/16/2014 | 5:57 a.m. | 01/13/2014 | 7:56 a.m. |
| 01/17/2014 | 5:57 a.m. | 01/14/2014 | 7:57 a.m. |
| 01/21/2014 | 7:59 a.m. | 01/15/2014 | 7:56 a.m. |
| 01/27/2014 | 7:56 a.m. | 01/16/2014 | 7:56 a.m. |
| 01/28/2014 | 7:57 a.m. | 01/17/2014 | 7:54 a.m. |
| 01/29/2014 | 7:57 a.m. | 01/27/2014 | 7:56 a.m. |
| 01/30/2014 | 7:56 a.m. | 01/28/2014 | 7:57 a.m. |
| 01/31/2014 | 7:57 a.m. | 01/29/2014 | 7:56 a.m. |
| 02/03/2014 | 7:58 a.m. | 01/30/2014 | 7:56 a.m. |
| 02/06/2014 | 7:56 a.m. | 01/31/2014 | 7:57 a.m. |
| 02/07/2014 | 7:57 a.m. | 02/03/2014 | 7:58 a.m. |
| 02/24/2014 | 7:54 a.m. | 02/04/2014 | 7:56 a.m. |
| 02/25/2014 | 5:57 a.m. | 02/06/2014 | 7:57 a.m. |
| 02/26/2014 | 7:55 a.m. | 02/07/2014 | 7:54 a.m. |
| 02/27/2014 | 7:56 a.m. | 02/24/2014 | 7:54 a.m. |
| 02/28/2014 | 7:57 a.m. | 02/25/2014 | 7:53 a.m. |
| 03/01/2014 | 5:57 a.m. | 02/26/2014 | 7:55 a.m. |
| | | 02/27/2014 | 7:56 a.m. |
| | | 02/28/2015 | 7:58 a.m. |

(Doc. No. 24-2).

3

Plaintiffs also allege they are entitled to compensation for time-sensitive tasks performed during their lunch breaks. (Doc. No. 1 at 5-6). Plaintiffs, however, offer no support for this allegation in their opposition to summary judgment.

Plaintiffs acknowledge FNST has an open door policy meant to encourage employees to discuss any problems or complaints with their immediate supervisor, with the supervisor's manager, or with human resources, or both. (Doc. No. 22-2 at 10-11; Doc. No. 22-3 at 10). Doerner, however, testified he never told anyone at FNST he was not properly compensated for overtime. (Doc. No. 22-2 at 11).

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "requires the [non-moving] party to go beyond the pleadings" and present some evidence in support of its position. *Celotex*, 477 U.S. at 324; s*ee also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). The non-moving party "need only present evidence from which a jury might return a verdict in his favor" in order to establish a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 257. Summary judgment shall be entered

"against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, a court "must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987)). "At the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## DISCUSSION

FNST argues Plaintiffs have failed to present detailed evidence showing they worked over 40 hours in any given workweek in which they were not paid, nor did they establish FNST knew of the alleged uncompensated overtime. (Doc. No. 22 at 7, 16; Doc. No. 26 at 4, 14). In response, Plaintiffs claim they provided detailed testimony coupled with time sheets showing they "routinely clocked in between 10 and 15 [minutes] early to perform tasks that were required to be completed before their 8:00 a.m. shifts started." (Doc. No. 24 at 4).

The FLSA requires employers to pay their employees "at a rate not less than one and one-half times the regular rate for work exceeding forty hours per week." 29 U.S.C. § 207(a)(1). Employers who fail to do so may be liable to their affected employees "in the amount of their . . . unpaid overtime compensation" and "in an additional equal amount as liquidated damages." *Id.* at § 216(b). "To prevail in an FLSA overtime suit, a plaintiff must prove, by a preponderance of the

evidence, that he 'performed work for which he was not properly compensated.'" M*oran v. Al Basit LLC*, No. 14-2335, 2015 WL 3448655, at *3 (6th Cir. June 1, 2015) (published decision) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49 §4(a) (codified at 29 U.S.C. § 254(a)). "The remedial nature of [the FLSA] and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee." *Mt. Clemens*, 328 U.S. at 687.

Keeping in line with this notion, the Sixth Circuit recently decided a plaintiff's testimony, when presented with no other evidence, may be sufficient to defeat summary judgment in an FLSA case. *Moran*, 2015 WL 3448655. The Sixth Circuit explained:

> [W]e do not require employees to recall their schedules with perfect accuracy in order to survive a motion for summary judgment. It is unsurprising, and in fact expected, that an employee would have difficulty recalling the exact hour he left work on a specific day months or years ago. It is, after all, the employer who has the duty under § 11(c) of the FLSA to keep proper records of wages and hours, and employees seldom keep such records themselves.

*Moran*, 2015 WL 3448655 at *4 (internal quotations omitted).

Here, Plaintiffs allege they "routinely" clocked in approximately fifteen minutes early before their shifts every week to perform pre-shift tasks. (Doc. No. 24 at 2). As support, Plaintiffs submitted time sheets which purportedly showed overtime crossed off by lead supervisors. (Doc. No. 24-2). Because Plaintiffs provided time sheets, I am not faced with a situation where I must evaluate Plaintiffs' claims based on testimony alone. The time sheets provided, however, reveal Plaintiffs rarely clocked in more than three or four minutes before their scheduled shifts, rather than the approximate fifteen minutes they allege. (Doc. No. 24-2). Indeed, there is not a single day that either Plaintiff clocked in over ten minutes before their scheduled shifts. Thus, the time sheets provided contradict Plaintiffs' central factual allegation -- that every day they clocked in ten to fifteen minutes before the start of their shifts. *See Booher ex rel. T.W. v. Montavon*, 555 F. App'x 479, 484 (6th Cir. 2014) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (where a non-moving party's

6

facts are "blatantly contradicted by objective evidence in the record . . . it fails to create a genuine issue of material fact for trial.")).

Doerner acknowledged as much during his deposition:

> Q. So, once again, in the next two sheets we look at, the earliest you clocked in before your shift is four minutes, and that was only on one day. On the other four days, the earliest you clocked in was three minutes before your shift.
>
> A. Yes, ma'am.
>
> Q. Is that right? Should we go through more?
>
> A. If you would like to.
>
> Q. Well let me ask you again. Do you think that you probably get to the plant and clock in to the plant, usually somewhere between four and three minutes before your shift?
>
> A. Looking at these, I would say yes.
>
> Q. Yes. And then you go to your locker and talk to your friends, and that takes two minutes, you already testified to, right?
>
> A. Yes, ma'am.

(Doc. No. 22-2 at 22).

Plaintiffs' time sheets unequivocally reveal they clocked in, on average, three to four minutes before their shifts. Dispositive here, the FLSA does not compensate for de minimis activity. The de minimis rule applies when "the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012) (quoting *Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984)). "It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946). When activity involves only minimal additional time beyond scheduled working hours, courts should disregard "such trifles" and not award compensation. *Id.* For this reason alone, Plaintiffs claim must fail.

7

In addition, Plaintiffs failed to comply with FNST's policy for tracking overtime. When an employer has an established policy for tracking overtime, "an employer is not liable for non-payment if the employee fails to follow the established process." *White*, 699 F.3d at 876. "When the employee fails to follow reasonable time reporting procedures [he] prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *Id*. To manage overtime and ensure that it compensates employees properly, FNST requires employees to schedule and obtain approval from lead employees before working outside their shift times. (Doc. No. 22-2 at 6-7; Doc. No. 22-3 at 9). Plaintiffs were aware of this policy, and they acknowledged FNST regularly paid employees for scheduled overtime. (Doc. No. 22-2 at 6; Doc. No. 22-3 at 9). Despite this knowledge, Plaintiffs failed to schedule and obtain approval for the times they allegedly worked outside their shifts.

Similarly, Plaintiffs did not inform anyone at FNST of their alleged uncompensated overtime. (Doc. No. 22-2 at 34; Doc. No. 22-3 at 10). *White*, 699 F.3d at 876 (quoting *Wood v. Mid-America Mgmt. Corp.*, 192 F. App'x 378, 381 (6th Cir. 2006)) ("[A]n employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself."). Thus, Plaintiffs' claims must also fail because an employer can not satisfy an obligation it has no reason to believe exists. *Wood*, 192 F. App'x at 381.

Plaintiffs briefly mention they are entitled to overtime compensation for work performed on a "rush basis" during their lunch breaks. (Doc. No. 24 at 4). The time sheets provided, however, show Plaintiffs took their full half-hour lunch breaks each day. (Doc. No. 24-2). Plaintiffs offer no further support, nor do they offer an explanation refuting the time sheets contradicting their allegation. Where "the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582.

8

Finally, Plaintiffs point to the handwriting on the timesheets to show Defendants had knowledge Plaintiffs worked more than 40 hours a week. Plaintiffs assert that "instead of compensating the employees for the time worked prior to their shift, Freudenberg supervisors would simply cross out the overtime and pretend it did not exist." (Doc. No. 24 at 6). Plaintiffs, however, provide no foundation for the handwriting on these timesheets. Moreover, there is no handwriting or markings on the timesheets related to either Plaintiff. Plaintiffs' testimony reflects that they have no knowledge pertaining to the handwriting on the timesheets, or whether any of their co-workers were paid overtime, or not paid overtime, as a result of the handwriting.

>Q: [D]o you see that the timesheets have handwriting on them?
>
>A: Yeah.
>
>Q: Whose handwriting is that?
>
>A: I have no idea

(Doc. No. 26-2 at 21).

>Q: Do you know whose handwriting is on these timesheets?
>
>A: I believe Kurt Bloomberg. I'm not 100% sure. I don't know.

(Doc. No. 26-1 at 11).

>Q. So you don't know -- even though you've produced these timesheets, you don't know what people are getting paid for actually do you?
>
>A. No.
>
>Q. And you don't know if they are being paid overtime, do you?
>
>A. No.

(Doc. No. 26-2 at 22-23).

>Q. And why did you produce [these timesheets] to Freudenberg?
>
>A. To show our punch-in out times.

9

Q. Is that what you believe these show in support of you case? Just your punch-in and out times?

A. Yes.

Q. Is there anything else you believe these timesheets show in support of your case?

A. No.

[….]

Q. [the timesheets] don't represent the true time that everyone's working right?

A. I don't know.

Q. You don't know? Okay. Do you know who reviews these timesheets?

A. No I do not.

Q. And do you know how these timesheets are submitted to payroll or whether they're submitted to payroll or not?

A. No.

(Doc. No. 26-3 at 29-30).

Simply put, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). To defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.,* 351 F.3d 240, 247 (6th Cir.2003) (quoting *Anderson,* 477 U.S. at 252). Accordingly, Plaintiffs' FLSA claims are dismissed.

## CONCLUSION

For the reasons stated above, FNST's motion for summary judgment is granted (Doc. No. 21).

So Ordered.

  <u>s/ <i>Jeffrey J. Helmick</i></u><br>
  United States District Judge